UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ASHLEY PEDEN, on behalf of herself and all others similar situated,

                    Plaintiff,

- against -

230FA LLC,

                    Defendant.
------------------------------------------------------------------------X

No.: 24 Civ. 7754

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff Ashley Peden, on behalf of herself and all others similarly situated ("Plaintiff"), by and through her attorneys Kessler Matura P.C., complaining of 230FA LLC ("Defendant"), alleges as follows:

## INTRODUCTION

1. Defendant operates 230 Fifth, the largest rooftop-bar in New York City with 33,000 sq ft of indoor and outdoor space.

2. Defendant employs bartenders and servers ("Tipped Workers") to serve their rooftop-bar customers. Tipped Workers earn an hourly wage and receive tips from customers.

3. In May 2022, Defendant, without good cause, refused to pay Tipped Workers their tipped income for several weeks beyond their regular payday. As a result, Defendant unlawfully withheld the Tipped Workers' wages from them for an unreasonable period of time, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the New York Labor Law ("NYLL"), Articles 6 and 19.

4. Additionally, from May 2023 through July 2023, Defendant stopped paying Tipped Workers their $1-per-drink-ticket wage without notifying the Tipped Workers, in violation of the NYLL and 12 N.Y.C.R.R. § 146 *et seq.* ("Hospitality Wage Order).

1

5. Defendant also violated the NYLL by changing the hourly rate of pay for Tipped Workers after work was performed.

6. Lastly, Defendant engaged in a policy and practice of applying a charge of approximately 20% (the "Administrative Charge") to customers' bills for private events worked by Tipped Workers.

7. Defendant provided documents such as event order forms, containing the Administrative Charge without expressly disclaiming that the charge is not a gratuity for the staff.

8. These customers, however, reasonably expected that these charges were gratuities to be paid to the Tipped Workers. But, Defendant retained the entire Administrative Charge in violation of the NYLL and Hospitality Wage Order.

9. Plaintiff now brings the First Cause of Action, pursuant to Section 216(b) of the FLSA, on behalf of all individuals employed by Defendant as Tipped Employees at any time since October 11, 2021, who elect to opt-in into this action (the "Collective").

10. Plaintiff brings the Second, Third, and Fourth Causes of Action, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") on behalf of all individuals employed by Defendant as Tipped Worker at any time since October 11, 2018 (the "NYLL Class") (together with the Collective, the "Class" or "Class Members").

**JURISDICTION & VENUE**

11. Jurisdiction of the Court over this controversy is based upon 28 U.S.C. §1331 and 29 U.S.C. § 216(b).

12. This action properly lies in the Southern District of New York, pursuant to 28 U.S.C. § 1391(b)(2), because events giving rise to this action occurred in New York County.

13. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367(a).

## THE PARTIES

*Plaintiff Ashley Peden*

14. Plaintiff Ashley Peden is a resident of McLennan County, Texas.

15. Peden was employed by Defendant as a bartender from about November 12, 2021, through July 2023.

16. As a bartender, Plaintiff made drinks for customers, served those customers drinks, prepared garnishes, collected used dishes and utensils from the bar, and cleaned the bar area.

17. Peden was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

18. Peden was an "employee" within the meaning of N.Y. Lab. Law §§ 190(2), 651(5), and 12 N.Y.C.R.R. § 146-3.2.

19. Peden was a "manual worker" within the meaning of the NYLL.

*Defendant 230FA LLC*

20. Defendant is a domestic limited liability corporation.

21. Defendant is authorized to do business pursuant to the laws of the State of New York.

22. Defendant owns and operates 230 Fifth.

23. 230 Fifth is a rooftop bar, restaurant, and event space.

24. Defendant's primary place of business is 230 5th Avenue, New York, NY 10001.

25. Defendant maintains control, oversight, and direction over its operations and employment practices.

26. Defendant maintained control, oversight, and direction over the putative Class Members, including timekeeping, payroll and other employment practices that applied to them.

27. The activities of Defendant constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

28. Defendant employs employees, including Plaintiff, who regularly engage in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

29. Defendant's employees, including Tipped Employees, handle credit card transactions.

30. Defendant's employees, including Tipped Employees, handle and serve food and beverage items that were brought to 230 Fifth from out of state or otherwise moved through channels of interstate commerce.

31. Tipped Employees work with and serve alcoholic beverages, for example, imported from across the United States and abroad, such as Tito's Vodka, Bacardi Superior, Cazadores Tequila, Jack Daniels, and Goose Island beers.

32. Defendant's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

33. Defendant charges customers to hold private events at 230 Fifth. The price per person at such events can exceed $200. For example, Defendant charged a customer $221.23 per person for a 50-guest event hosted at the "Hard Bar" location at 230 Fifth on June 15, 2023. These events may also have hundreds of guests. For example, Washington University contracted with Defendant for a 600-guest event on June 15, 2023.

34. Defendant is an "employer" within the meaning of 29 U.S.C. § 203(d).

35. Defendant was and still is an "employer" within the meaning of the N.Y. Lab. Law §§ 190(3) and 651(6).

## COLLECTIVE ACTION CLAIMS

36. Upon information and belief, there are approximately more than 20 members of the Putative Collective that are similarly situated to the Plaintiff who were denied payment of their wages on time by Defendant.

37. Defendant withheld tips from Plaintiff and the other putative Collective Action members.

38. Defendant was aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiff and the Collective, on their regular payday.

39. The Collective is readily identifiable and locatable through the use of the Defendant's records. The Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the Collective, who have been unlawfully deprived of earned wages in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## CLASS ACTION ALLEGATIONS

40. The persons in the NYLL Class are so numerous that joinder of all members is impracticable. Further, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants.

41. Upon information and belief, the size of the Class is at least 100 individuals.

42. Over the course of any given week, Defendant employ dozens of Class Members.

43. This matter is properly maintainable as a class action under Rule 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the putative Class, including but not limited to:

   a. whether Defendant was required to pay Plaintiff and the Class Members all tips within seven days after the end of the workweek;

   b. whether Defendant failed to pay Plaintiff and the Class Members all earned wages;

   c. whether Defendant failed to pay Plaintiff and the Class at the agreed-upon rate of pay for all hours worked;

   d. whether Defendant failed to pay Plaintiff and the Class all gratuities due to them for events;

   e. whether Defendant's failure to pay Plaintiff and the Class Members on time resulted from a reasonable, good-faith belief that its delayed-payment payroll practice complied with the NYLL;

   f. whether Defendant's failure to pay Plaintiff and the Class all earned wages due to them resulted from a reasonable, good-faith belief that its payment payroll practice complied with the NYLL; and

   g. whether Defendant's failure to pay Plaintiff and the Class all tips due to them resulted from a reasonable, good-faith belief that its payment payroll practice complied with the NYLL.

44. Plaintiff fairly and adequately protects the interests of and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class-action and employment litigation.

45. A class is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in court against the corporate defendant. The damages sustained by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

46. Further, Plaintiff and the Class have been equally affected by Defendant's failure to pay proper wages.

47. Members of the Class still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

48. Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

49. Plaintiff's claims are typical of those of the Class. Plaintiff and the other Class Members were subjected to Defendants' policies, practices, programs, procedures, protocols, and plans alleged herein concerning the failure to pay proper wages. Plaintiff's job duties are typical of those of the class members.

## COMMON FACTUAL ALLEGATIONS

*Delayed Payment of Wages*

50. Plaintiff and Class Members spent the majority of their time performing physical work. Bartenders' physical labor included making drinks for customers, serving customers drinks, preparing garnishes, collecting used dishes and utensils from the bar, and cleaning the bar area. Servers' physical labor included bringing customers their food and drinks and cleaning their work areas.

51. 230 Fifth paid their employees late throughout the time relevant to the Complaint.

52. For example, on December 29, 2022, Class Members worked an event in which gratuities were not included on their next paycheck.

53. 230 Fifth paid Class Members their earned gratuities a week later, more than seven days after the applicable workweek.

54. From approximately May 22, 2022, through July 2022, Defendant violated the FLSA and NYLL by failing to distribute to Plaintiff and Class Members all their earned wages within seven days after the close of the workweek.

55. During this period, Defendant withheld the tips of Plaintiff and Class Members for more than seven days after the end of the workweek.

56. 230 Fifth required Class Members to pool their cash tips.

57. 230 Fifth would hold the cash tips in its safe until it calculated each Class Member's shares.

58. Plaintiff and the Class Members were uniformly deprived of the time value of their earned wages during periods in which payment was illegally delayed. Plaintiff and the Class Members lost the opportunity to grow such untimely-paid wages through investment. Plaintiff and the Class Members also lost the opportunity to use their earned wages which Defendant wrongfully withheld.

59. Defendant does not possess a good faith basis for refusing to pay the Class Members' wages on time.

60. The State of New York has required employers to pay certain manual workers on a weekly basis since the 19th Century. *See* N.Y. Session Law 1890, Ch. 388 § 1; N.Y. Session Law 1897, Ch. 415 §§ 2, 10.

61. A reasonable employer inquiring into New York's wage payment rules would know that manual workers are to be paid each week given that, for example, the rules are listed on the Department of Labor's Frequently Asked Questions flyer regarding the Wage Theft Prevention Act (https://dol.ny.gov/system/files/documents/2021/03/wage-theft-prevention-act-frequently-asked-questions_0.pdf) and many legal, human resource, and employment blogs brought attention

to this issue following the First Department's 2019 decision in *Vega v. CM & Assocs. Constr. Mgmt. LLC*, 175 A.D.3d 1144 (1st Dep't 2019).

62. Defendant did not apply to the New York State Department of Labor for authorization to pay any manual workers in New York state on a less frequent basis than weekly as permitted by Section 191 of the NYLL.

63. Defendant does not employ enough employees to qualify for an exemption from the requirements for Section 191 of the NYLL.

64. Upon information and belief, Defendant did not: (a) inquire into whether its practice of delaying the payment of wages complied with the NYLL or FLSA; and (b) take requisite steps to ensure that Plaintiff and Class Members were paid as per the timely pay requirements of the NYLL and the FLSA.

65. A reasonable employer inquiring into FLSA's wage payment rules would know that employers may not withhold their employees' wages beyond payday. For over 80 years, it has been the law of this Circuit that "'late' wages are considered to be a form of 'unpaid' wages." *See Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 360 (S.D.N.Y. 2014) (citing *Rigopoulos v. Kervan*, 140 F.2d 506, 507 (2d Cir. 1943)). Moreover, in 1945, the Supreme Court held that liquidated damages are appropriate "in the event of [a] delay" in payment. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945), *aff'g* 293 N.Y. 666 (N.Y. 1944).

**Drink Tickets**

66. At various times, 230 Fifth requires customers to pay a cover charge to enter the roof-top bar. Generally, this was on a Friday or Saturday night.

67. In exchange for the cover charge, customers get a ticket which they can exchange for a free drink.

68. The value of the drink customers could receive for their ticket was capped at $15 to $25, depending on the period at issue.

69. Additionally, 230 Fifth hosts promotional events, such as a Rose Festival, Oscar nomination party, and tequila tasting events. At these events, customers received drink tickets.

70. Generally, customers are less likely to leave Tipped Workers a tip when handing in a drink ticket, even though the tickets encouraged tipping:



71. 230 Fifth began paying their Tipped Workers $1-per-drink-ticket starting in about September or October of 2022.

72. Tipped Workers received customers' drink tickets throughout their shift. They collected them and then logged them into 230 Fifth's handheld POS system.

73. 230 Fifth then paid Tipped Workers a $1-per-drink-ticket wage with their regular payroll.

74. 230 Fifth, however, stopped paying Tipped Workers their $1-per-drink-ticket wage in July 2023.

75. 230 Fifth never notified their Tipped Workers that they were no longer paying their employees in exchange for the drink tickets they turned in.

76. As a result, 230 Fifth failed to pay their Tipped Workers their earned wages from May 2023 through July 2023.

***Administrative Charges***

77. 230 Fifth contracted with customers to cater events such as parties, gatherings, holidays, celebrations, wedding receptions, and other private events ("catered events").

78. For each catered event, 230 Fifth employed a staff of numerous Tipped Workers to perform food and beverage related tasks.

79. 230 Fifth applied an Administrative Charge in the amount of approximately 20% to customers for catered events.

80. 230 Fifth failed to validly disclaim that the Administrative Charge was not a gratuity for the staff.

81. Upon information and belief, reasonable customers would have understood the Administrative Charge to be in the nature of a gratuity.

82. Plaintiff, and, upon information and belief, other members of the putative class, were not paid a portion of the Administrative Charge.

83. For example, Tipped Workers worked the event in referenced in paragraph 33 above, in which the customer was charged a 20% Administrative Charge.

84. Plaintiff, and, upon information and belief, other members of the putative class, were paid an hourly wage.

11

85. Upon information and belief, 230 Fifth retained the Administrative Charge for themselves.

*Post-Hoc Changes to Rates of Pay*

86. 230 Fifth pays Tipped Workers different rates depending on whether they worked an event or worked in the bar area for the general public.

87. 230 Fifth generally paid Tipped Workers at the tipped minimum wage when working an event with a cash bar or serving the general public.

88. 230 Fifth, however, paid Tipped Workers at an event-pay rate (about $25 an hour) for open-bar events.

89. 230 Fifth did not advise Tipped Workers in advance of their shift what rates they would be paid.

90. 230 Fifth required Tipped Worker to work events without knowing whether 230 Fifth would pay them $25 an hour or at the tipped minimum wage.

91. For example, Tipped Workers worked events for the first half of their shift, relieving workers serving an event such as the Tequila Festival, and then were moved to the general customer area after the event ended. Though Tipped Workers expected to get $25 an hour for working the event, they were paid the entire shift at the tipped minimum wage.

92. The Tequila Festival occurred in the summer of 2022.

93. Likewise, on January 16, 2023, 230 Fifth's floor manager, advised Tipped Workers that anyone could be assigned to work events without notice.

## FIRST CAUSE OF ACTION
### FLSA – Failure to Pay Timely Wages
### (On Behalf of Plaintiff and the Class Members)

94. Plaintiff incorporates by reference all preceding allegations.

95. The FLSA requires employers to promptly pay wages to employees.

96. The FLSA provides that an employer may not keep tips received by its employees for any purpose. *See* 29 U.S.C. § 203(m)(2)(B); 29 C.F.R. § 531.54(b)(2).

97. The FLSA applies to Defendant and covers Plaintiff and the Collective.

98. Defendant did not pay Plaintiff and the Collective their tips on the regular payday for the workweek in which the tips were earned. Defendant held such until a later date in violation of the FLSA.

99. Plaintiff and the Collective suffered injuries due to Defendant's late payments including, but not limited to, the loss of the time value of money and the inability to invest, earn interest on, or otherwise use the untimely paid wages.

100. Defendant's violations of the FLSA were willful.

101. Defendant's violations of the FLSA were not reasonable, good-faith errors.

102. Due to Defendant's violations of the FLSA, Plaintiff and the Collective are entitled to damages from Defendant due to such underpayments caused by Defendant's violations of FLSA timely pay laws for the entire Collective period. Such damages include, but are not limited to, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### NYLL – Failure to Pay Timely Wages
### (On Behalf of Plaintiff and the Class Members)

103. Plaintiff incorporates by reference all preceding allegations.

13

104. The NYLL requires employers to pay timely wages to employees. NYLL § 191 and NYLL's regulations state that manual workers, which include the Plaintiff and the 191 Class Members, must be paid on a weekly basis.

105. NYLL § 191 and its regulations apply to Defendant and cover Plaintiff and the 191 Class Members.

106. Defendant did not pay Plaintiff and the Class Members each week. Defendant paid Plaintiff and the 191 Class Members on a biweekly basis in violation of the NYLL.

107. Defendant paid Plaintiff and the Class Members more than seven days after the end of the workweek in violation of the NYLL.

108. Defendants' failure to pay all earned wages to Plaintiffs and the members of the Class was not done in good faith within the meaning of Section 198 and 663 of the NYLL.

109. Plaintiff and the Class Members suffered injuries due to Defendant's late wage payments including, but not limited to, the loss of the time value of money, inability to invest or earn interest on the untimely paid wages, and inability to use their untimely-paid wages to maintain sustenance.

110. Defendant's failure to pay Plaintiff and the members of the Class on time was not done in good faith within the meaning of Sections 198 and 663 of the NYLL.

111. Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to damages from Defendant due to such underpayments caused by Defendant's violations of NYLL's timely pay laws for the entire NYLL class period. Such damages include, but are not limited to, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs. N.Y. Lab. Law § 198.

### THIRD CAUSE OF ACTION
### NYLL – Unpaid Wages
### (Brought on behalf of the Plaintiff and the Class)

112. Plaintiff incorporates by reference all preceding allegations.

113. Defendant employed Plaintiffs and the members of the Class and willfully failed to compensate Plaintiffs and the members of the Class all earned wages, as required by the NYLL.

114. By the course of conduct set forth above, Defendant violated the NYLL by failing to pay Plaintiff and the Class Members all wages which they earned. *See* N.Y. Lab. L. §§ 190, et seq., 650, et seq. and 12 N.Y.C.R.R. § 146-1.1, *et seq.*

115. Defendants had a policy and practice of refusing to pay Plaintiff and the Class Members all earned wages.

116. Defendant's failure to pay all earned wages to Plaintiff and the members of the Class was not done in good faith within the meaning of Sections 198 and 663 of the NYLL.

117. Because of these underpayments of wages, alleged above, Plaintiff and the Class have incurred damages thereby and the Defendant is indebted to them in the amount of the unpaid wages, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### NYLL – Failure to Pay All Earned Tips
### (Brought on behalf of the Plaintiff and the Class)

118. Plaintiff incorporates by reference all preceding allegations.

119. Pursuant to Section 196-d of the NYLL, and the supporting Hospitality Wage Order, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee,

15

or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." *See* N.Y. Lab. L. § 196-d.

120. Pursuant to Section 146-2.18(b) of the Hospitality Wage Order, "[t]here shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity." *See* 12 N.Y.C.R.R. § 146-2.18(b).

121. Defendant employed Plaintiff and the members of the Class and willfully failed to distribute gratuities or tips to Plaintiff and the members of the Class, as required by the NYLL and Hospitality Wage Order.

122. Pursuant Section 146-2.19(b) of the Hospitality Wage Order, "[t]he employer has the burden of demonstrating, by clear and convincing evidence, that the notification [via a disclaimer] was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity." *See* 12 N.Y.C.R.R. § 146-2.19(b).

123. Defendant has a policy and practice of failing to clearly identify a charge for the administration of a banquet, special function, or package deal as such, thereby failing to notify customers that the charge is not gratuity or tip.

124. Defendant unlawfully kept gratuities, when it applied Administrative Charges to customers' bills for private events worked by Plaintiff and Class Members, which customers' reasonably expected were gratuities to be paid to Plaintiff and Class Members.

125. Defendant's failure to pay these wages to Plaintiff and the members of the Class was not done in good faith within the meaning of Sections 198 and 663 of the NYLL.

126. Because of these underpayments of wages, alleged above, Plaintiff and the Class have incurred damages thereby and the Defendant is indebted to them in the amount of the unpaid

wages, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks the following relief:

A. The Court, at the earliest possible time, certify this case as a collective action, authorize the issuance of notice to the Collective, and permit putative Collective members to opt into this action;

B. Certification of this case as a class action pursuant to Rule 23;

C. Designation of Plaintiff as the class representative, and counsel of record as class counsel;

D. Unpaid wages that were unlawfully deducted, reduced, and withheld pursuant to the FLSA, NYLL and the supporting Hospitality Wage Order;

E. Liquidated damages;

F. Pre-judgment interest and post-judgment interest as provided by law;

G. Appropriate equitable and injunctive relief to remedy violations;

H. Attorneys' fees and costs of the action;

I. A declaratory judgment that the practices complained of are unlawful;

J. A reasonable incentive award for Plaintiff to compensate her for the time she spent and for the risks she took attempting to recover wages for the Class;

K. Any other injunctive and equitable relief as this Court deems just and proper; and,

L. Such other relief as this Court deems just and proper.

Dated: Melville, New York
October 11, 2024

Respectfully submitted,

/s/ Garrett Kaske
Garrett Kaske

Troy L. Kessler
Garrett Kaske
Jocelyn Small
**KESSLER MATURA P.C.**

17

        534 Broadhollow Road, Suite 275
        Melville, New York 11747
        (631) 499-9100
        tkessler@kesslermatura.com
        gkaske@kesslermatura.com
        jsmall@kesslermatura.com

        ***Attorneys for Plaintiff and the***
        ***Putative Class and Collective Actions***