UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHLEY PEDEN, on behalf of herself and all others similar situated,<br><br>Plaintiff,<br><br>- against -<br><br>230FA LLC,<br><br>Defendant. | No.: 24 Civ. 07754 (DEH) (SLC) |

**DECLARATION OF GARRETT KASKE**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**APPROVAL OF FLSA SETTLEMENT**

I, Garrett Kaske, declare as follows:

1. I am a partner at the law firm of Kessler Matura, P.C. ("KM"), counsel for Plaintiff Ashley Peden.

2. I am one of the attorneys responsible for the prosecution of this matter against Defendant, 230FA LLC.

3. I am familiar with the facts and circumstances of this action. I submit this declaration to place before the court with relevant documents and information in further support of Plaintiff's Motion for Approval of the FLSA Settlement.

**Procedural and Factual Background**

4. Before filing the litigation, KM engaged in an investigation of the Plaintiff's claims, Defendant's businesses, ownership, and prior litigation, Defendant's anticipated defenses, the propriety of obtaining and maintaining collective certification through trial, and the risks associated with litigation.

5. As part of this process, KM interviewed Plaintiff Peden and reviewed her employment records, which included her paystubs, text messages, and other relevant documents. KM also spoke to other employees of Defendant.

6. On October 5, 2023, KM sent a letter to Defendant advising Defendant of Plaintiff Peden's claims that Defendant allegedly violated her rights under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et seq*., and New York Labor Law ("NYLL"), Articles 6 & 19. The letter alleged that Defendant had failed to pay Plaintiff timely wages, retained an administrative charge from private events, paid employees at a lesser rate, failed to pay wages earned through drink tickets, and systematically delayed the payment of cash tips. Defendant did not respond.

7. After completing a continued investigation, Plaintiff filed the Complaint (ECF No. 1) on October 11, 2024, and served it on October 17 (*see* ECF No. 12).

8. The Parties reached a settlement in principle through SDNY's mediation program, on February 25, 2025, with experienced mediator, Michael Wolfson. The Parties then negotiated and executed the formal Settlement and Release Agreement (the "Settlement Agreement"), which is attached as **Exhibit A**.

**<u>The Settlement Agreement is Fair and Reasonable</u>**

***The Agreement***

9. The Settlement Agreement provides for Plaintiff and Kessler Matura, P.C. to collectively be paid a gross total of $26,250. *See* Ex. A (Agr.) § 1.

10. As consideration, Plaintiff will release Defendant and related Releasees identified in the Settlement Agreement of all wage-and-hour claims. *Id*. Plaintiff will not release any other potential claims.

11. The Settlement Agreement does not contain any confidentiality provisions, non-disparagement clause, no-rehire clauses, or non-solicitation clauses that are disfavored in FLSA settlements.

***Estimates of Possible Recovery***

12. Based on my communications with Plaintiff, review of her employment and payroll records, and understanding of the Parties' disputes, I estimate that her best-case scenario at trial would be approximately $79,234.44, excluding attorneys' fees and costs, divided as follows:

| Claim | Back Pay | Liquidated Damages | Interest | Total |
|---|---|---|---|---|
| Drink Tickets | $523.70 | $523.70 | $80.84 | **$1,128.24** |
| Wage Delays | $0.00 | $20,350.13 | $0.00 | **$20,350.13** |
| Wage Changes | $3,960.00 | $3,960.00 | $875.38 | **$8,795.38** |
| Admin Charges | $22,043.90 | $22,043.90 | $4,872.91 | **$48,960.70** |
| **Total** | **$26,527.60** | **$46,877.73** | **$5,829.13** | **$79,234.44** |

But, in advance of the mediation, Defendant produced convincing evidence challenging the viability of Plaintiff's claim that Defendant's administrative charges should have been deemed a gratuity. If that claim is omitted, Plaintiff's best-case recovery would be reduced to the following:

| Claim | Back Pay | Liquidated Damages | Interest | Total |
|---|---|---|---|---|
| Drink Tickets | $523.70 | $523.70 | $80.84 | **$1,128.24** |
| Wage Delays | $0.00 | $20,350.13 | $0.00 | **$20,350.13** |
| Wage Changes | $3,960.00 | $3,960.00 | $875.38 | **$8,795.38** |
| Admin Charges | | | | |
| **Total** | **$4,483.70** | **$24,833.83** | **$956.22** | **$30,273.75** |

13. The settlement represents 33% of Plaintiff's pre-mediation best-case scenario and 87% of her expected recovery, should Plaintiff credit Defendant's counter evidence. Even after KM's one-third fee, Plaintiff's recovery represents between 22% and 58% of these models.

***Risks of Continued Litigation***

14. The Agreement reflects a reasonable compromise of this matter.

15. This is particularly true, given the risks associated with continued litigation.

16. Defendant denies that Plaintiff is owed anything. Based on our communications with Defendant, we believe that Defendant would argue, among other things, that:

a. Plaintiff is not entitled to any damages arising from the alleged failure to pay tips on time because the bartenders were in charge of their own tip pool and Plaintiff lacks a private right of action for these claims. *See, e.g.*, *Rodriguez v. Williams-Sonoma, Inc.*, No. 22 Civ, 2025 WL 711340, at *3 (E.D.N.Y. Feb. 20, 2025) (staying case pending outcome of appeal on whether a private right of action exists for late-paid wage cases under the NYLL, noting split among district courts);

*b.* Plaintiff is not entitled to liquidated damages equal to 100% of the late-paid tips, as Defendant acted in good faith and such an award would be overly punitive. *See, e.g.*, *Georgiou v. Harmon Stores, Inc.*, No. 2:22 Civ. 2861, 2023 WL 112805, at *7 (E.D.N.Y. Jan. 5, 2023) (noting that the court may reduce an award on remitter and that the good-faith defense is a complete defense).

c. Defendant regularly paid tips on a timely basis in accordance with the FLSA.

d. Defendant provided NYLL-compliant language on contracts that established that administrative charges were not a gratuity.

e. Plaintiff was paid at the rate of pay due to her for all work performed and her rates were never changed or altered after the fact.

f. The drink-ticket monies were not wages covered by the NYLL.

17. At trial, or even on a summary judgment motion, these and other issues could potentially be resolved in Defendant's favor, thereby undermining Plaintiff's theories of liability and damages.

18. While I believe Plaintiff would ultimately prevail, the anticipated motions, trial, and appeals process are uncertain, costly, and lengthy.

19. Moreover, despite the complex factual and legal disputes outlined above, this case does not present an important factual or legal issue that must be determined by the Court to benefit others litigating similar claims or engaging with similar issues in the workplace.

***Attorneys' Fees and Costs***

20. KM has significant experience prosecuting wage-and-hour matters on behalf of individuals and classes. For example, in *Garcia v. Pancho Villa's of Huntington Village*, the Honorable E. Thomas Boyle, U.S.M.J., certified the matter as a class action stating that KM's attorneys "are experienced labor and employment litigators, who have successfully represented employees in numerous collective and class action lawsuits." 281 F.R.D. 100, 107 (E.D.N.Y. 2011). In *Dawson v. Sterling Bancorp., Inc.*, the Honorable Linda Kevins, J.S.C., preliminary approved a class action settlement involving unpaid overtime claims for assistant branch managers of a bank. 2020 WL 6686606 (Sup. Ct. Oct. 29, 2020). Judge Kevins determined that KM "has substantial experience and is well versed on the subject matter of the lawsuit." *Id*. at *2. In *Ellison v. Adam Rest Corp*., the Honorable Conrad D. Singer, J.S.C., certified a class of restaurant workers seeking unpaid minimum wages. 2024 WL 2273524 (Sup. Ct. Apr. 2, 2024). Judge Singer held that KM "holds sufficient qualifications" to serve as class counsel. *Id*. at *3.

21. That experience was directly responsible for bringing about the positive settlement and weighs in favor of approval of that portion of the Settlement representing attorneys' fees.

22. As of March 7, 2025, KM had spent over 48.2 hours litigating and settling this case. *See* Ex. D (Summary). These hours were compiled from our firm's contemporaneous time records. See Ex. E (Time Records). The hours do not reflect the full extent of KM's time investment in this matter, as it does not capture all of KM's work to date seeking approval and the work KM will do to oversee the settlement payment.

23. KM is a relatively small firm consisting of six attorneys and three support staff members. As such, we have made every effort to use our resources wisely, including in allocating work to be performed by an attorney with the lowest hourly rate who was able to effectively perform it. Accordingly, we have used billing judgment in compiling our contemporaneous time records and calculating our total lodestar.

24. For instance, KM excluded or reduced the time I or Jocelyn Small spent performing administrative tasks, such as e-filing, copying, scanning, or preparing hard-copy materials, which could have been performed by support staff at a lesser hourly rate. Likewise, we either excluded or reduced time for work we performed because it was potentially duplicative of the work the other had performed. KM further reduced the time spent by paralegal, Kristine Jimenez, to zero because her involvement in this matter was limited to less than an hour. These reductions to KM's hours are listed noting reductions in time in bold, red font in the "Net Time" column of KM's time records. *See* Ex. E (Time Records). In all, this represents an over 26% reduction to the KM's billable hours – from 48.2 to 35.5 total hours.

25. As of March 7, Kessler Matura, P.C.'s total lodestar was $13,575, exclusive of costs, and $14,450 inclusive of costs. *See* Ex. D (Summary). KM will continue to invest

significant time on this case, including seeking approval of this settlement and administering the distribution of Plaintiff's settlement payments.

26. As of March 7, KM accrued over $575 in actual litigation costs and expenses, including the $405 filing fee and $170 in process-server fees. *See id*. KM is not seeking these costs to be reimbursed separate and apart from the one-third fee KM is requesting. Further, KM is not seeking reimbursement for other commonly recovered costs, printing and copying costs, and shipping costs associated with the administration of the settlement.

27. In our experience, law firms on Long Island and New York City representing plaintiffs in wage-and-hour litigation typically charge their clients at least one-third of their gross recoveries when representing them on a contingent basis. *See Savino v. Visiting Nurse Serv. of New York*, No. 15 Civ. 9451, 2017 WL 2473214, at *3 (S.D.N.Y. June 7, 2017) ("Contingency fees of one-third in [unpaid wages] cases are routinely approved in this circuit." (collecting cases)); *Varela v Bldg. Serv. Indus., LLC*, No. 600037/2016, 2018 N.Y. Slip Op. 35514(U), at *3 (Sup. Ct. June 25, 2018) (collecting cases); *Wu v. Maxphoto NY Corp*., No. 15 Civ. 3050, 2016 WL 7131937, at *3 (E.D.N.Y. Nov. 15, 2016) (approving attorney's fees equal to 40% of the settlement; noting that attorney's fees equal to one-third of the gross settlement are "reasonable and consistent" with local norms).

28. Pursuant to Plaintiff's retainer agreement with KM, which provides for KM to seek up to one-third of the gross settlement as attorneys' fees, KM has worked without compensation of any kind. KM undertook to prosecute this action without any assurance of payment, litigating the case on a wholly contingent basis in the face of significant risk. Wage-and-hour cases of this type are, by their very nature, complicated and time-consuming. KM frequently undertakes representation of large numbers of affected employees in wage-and-hour actions. Although this

typically requires a tremendous investment of time, energy and resources, these cases help push the law in a direction favorable to employees. This case was no exception. Due also to the contingent nature of our fee arrangement in this case, KM was prepared to and did make a substantial investment of time and resources with the very real possibility of an unsuccessful outcome – whether as a result of class and collective decertification or adjudication on the merits – and no fee of any kind – resulting in an expensive loss.

29. Although much of KM's work is on a contingent or hybrid fee arrangement, KM has hourly clients. For these clients, KM's ordinary and regular billing rates are within the following ranges: $725 to $500 per hour for partners, $475 and $325 per hour for associates, and $100 to $150 per hour for paralegals and legal assistants. For example, before becoming a partner on October 1, 2024, I worked on an unpaid wages matter from July through December 2022 for which KM billed $400 an hour for my services.

30. With regards to contingency fee cases, for purposes of the crosscheck, New York courts have approved wage-and-hour settlements in which KM's attorneys submitted lodestar calculations using rates like those included here. For instance, in approving a FLSA settlement the Court held that KM's attorneys' "hourly rates . . . fall within the range of reasonable rates within the Eastern District of New York." *Nunes v. Rob-Glen Enters., Inc.*, No. 16 Civ. 6207, 2018 WL 3351798, at *2 (E.D.N.Y. July 5, 2018).[1] Other examples include:

a. *Lucente v. EAD Entertainment, LLC*, No. 23 Civ. 3560, ECF Nos. 34-35 (E.D.N.Y. Nov. 7, 2024) (approving KM's motion for approval of class and collective action

---

[1] *See* Summary of Attorneys' Fees, *Nunes v. Rob-Glen Enters., Inc.*, No. 16 Civ. 6207, ECF No. 41-3 (E.D.N.Y. June 5, 2018) (calculating lodestar using the following rates for KM's attorneys: $450 for partner, Troy Kessler, $375 for partner, Marijana Matura, $250 for associate, Tana Forrester, who was three years out of law school at the time).

settlement and noting at the hearing that "I have no problem with the attorney's fees. If the Kessler firm tells me this is what it is, I would take that to the bank and I am comfortable with all of it." (Tr. 5:18-23));

b. *Norfleet v. RevCore Recovery Ctr. Manhattan LLC*, No. 617754/2023, NYSCEF No. 18 (Sup. Ct. Jan 19, 2024) (approving KM's motion for approval of class action settlement);

c. *Manfredo v. VIP Auto Group of Long Island, Inc.*, 2:20 Civ. 3728, ECF No. 47 (E.D.N.Y. Jan. 23, 2023) (granting final approval of class and collective action settlement in overtime case);

a. *Henne v. LI Wax FD LLC*, No. 200516/2022, NYSCEF No.21 (Sup. Ct. Oct. 18, 2022) (granting approval of class action settlement in late-paid wages case);

b. *Lopez v. New York Community Bancorp, Inc.*, 2:20 Civ. 2741 (E.D.N.Y. Oct. 7, 2021) (ECF Order) (granting motion to approve collective action settlement and finding that "the terms of the amended settlement agreement and the attorneys' fees and costs are fair and reasonable"); and

c. *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, 2020 WL 4047897, at *3 (E.D.N.Y. July 17, 2020) (approving fees based on percentage-of-recovery and lodestar crosscheck, in which the court reviewed billing rates of KM and co-counsel).[2]

---

[2] Attorneys' Fees & Costs Summary, *Lucente v. EAD Entertainment, LLC*, No. 23 Civ. 3560, ECF No. 32-9 (E.D.N.Y. Oct. 28, 2024) (calculating lodestar using $450 for Garrett Kaske and $400 for associate Benjamin Goldstein.); Attorneys' Fees & Costs Summary, *Norfleet v. RevCore Recovery Ctr. Manhattan LLC*, No. 617754/2023, NYSCEF No. 13 (Sup. Ct. Nov. 14, 2023) (calculating lodestar using $425 for Garrett Kaske (as an associate)); Attorneys' Fees & Costs Summary, *Manfredo v. VIP Auto Group of Long Island, Inc.*, 2:20 Civ. 3728, ECF No. 46-8 (E.D.N.Y. June 6, 2022) (calculating lodestar using $375 for Garrett Kaske); Attorneys' Fees & Costs Summary, *Henne v. LI Wax FD LLC*, No. 200516/2022, NYSCEF No.13 (Sup. Ct. Sept. 28, 2022) (calculating lodestar using $375 for Garrett Kaske and $275 for associate Jocelyn Small);

## Exhibits

31. Annexed as **Exhibit A** is a copy the Settlement Agreement.

32. Annexed as **Exhibit B** is Garrett Kaske's curriculum vitae ("Kaske CV").

33. Annexed as **Exhibit C** is Jocelyn Small's curriculum vitae ("Small CV").

34. Annexed as **Exhibit D** is a summary of KM's attorneys' fees and costs ("Summary").

35. Annexed as **Exhibit E** are KM's contemporaneous time records ("Time Records").

36. Annexed as **Exhibit F** is a Stipulation of Dismissal with Prejudice signed by counsel for each of the parties ("Stipulation of Dismissal").

* * *

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: Melville, New York
March 28, 2025

Respectfully submitted,

Garrett Kaske

**KESSLER MATURA P.C.**
Troy L. Kessler
Garrett Kaske
Jocelyn Small
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
***Attorneys for Plaintiff***

---

Attorneys' Fees & Costs Summary, *Lopez v. New York Community Bancorp, Inc.*, 2:20 Civ. 2741, ECF No. 54-8 (E.D.N.Y. Sept. 13, 2021) (calculating lodestar using $375 for Garrett Kaske); Attorneys' Fees & Costs Summary, *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, ECF No. 55-4 (E.D.N.Y. May 11, 2020) (calculating lodestar using $350 for Garrett Kaske).